DAVID W. BALDWIN, APPELLANT, v. JOHN F. MOFFETT AND GILDEROY LORD, TRUSTEES, ETC., AND OTHERS, RESPONDENTS.

*Usury — when the lender cannot claim to be subrogated to the rights of one whose incumbrance was paid off by the money borrowed.*

The plaintiff purchased thirteen out of forty bonds issued by one Sherman, the payment of which was secured by a mortgage given by Sherman upon land owned by him, which was then subject to a prior mortgage. The plaintiff purchased the bonds upon the condition that the money paid by him should ꝫe used to discharge the first mortgage. This was done, and a satisfaction thereof was duly recorded, whereupon the bonds were delivered to the plaintiff. These bonds having been subsequently declared void, because purchased at a usurious discount, the plaintiff sought in this action to have the first mortgage revived and foreclosed.

*Held,* that the action could not be maintained.

APPEAL from a judgment, entered on the report of a referee dismissing the complaint.

On the 15th of April, 1874, the defendant Wooster Sherman, for the purpose of securing the payment to Charles E. Appleby of the sum of $20,000 and interest, executed to Appleby the bond mentioned and described in the complaint, and as collateral security for the payment thereof Sherman and wife on the same day

executed the mortgage mentioned in the complaint. The mortgage was duly recorded. The bond and mortgage became due on April 1, 1875, and there was unpaid thereon on April 1, 1876, the sum of $6,067.89. On or about September 28, 1875, the defendant Wooster Sherman executed forty bonds of $500 each, payable to bearer on the 1st day of October, 1880, with interest thereon at the rate of seven per cent, payable semi-annually, the interest being represented by coupons attached to the bonds, and on the same day Sherman and wife for the purpose of securing the payment of the bonds, and as collateral thereto, executed to the defendants John F. Moffett and Gilderoy Lord, as trustees, for the benefit of such persons as might become purchasers of said bonds, a mortgage on the same premises described in the Appleby mortgage, which contained the same condition as the bonds; and the further condition that if said Sherman should not pay the money secured by the bonds according to the terms thereof, then the said trustees and their successors in office were empowered to sell the mortgaged premises, and out of the moneys arising from such sale to pay the sums of money and interest by said bonds secured to be paid. Previous to the 25th of March, 1876, all of said bonds except fifteen had been sold by Sherman to different purchasers other than the plaintiff for full value, and the same were unpaid April 7, 1880. On March 25, 1876, the plaintiff loaned to Wooster Sherman the sum of $750, and as collateral security thereto received from him two of the fifteen bonds remaining unsold. At the time of the loan it was agreed between Sherman and the plaintiff that in case plaintiff should decide to purchase from Sherman the remaining thirteen of the bonds, together with the two above mentioned, then the loan of $750 should be deducted from the purchase-price of the fifteen bonds. About the middle of March, 1876, Wooster Sherman employed T. H. Camp, president of the Jefferson County National Bank, to sell for him the bonds which had not been disposed of. On or about March 29, 1876, the plaintiff delivered to Camp, as agent for Sherman, his check on said bank, in which plaintiff had that amount of funds, for $6,375 to pay the balance due for the fifteen bonds before mentioned upon the usurious agreement that the plaintiff should have the same at a discount of five per cent from the face value thereof, in addition to the seven per cent

interest for his loan, and that out of the money paid for the bonds Camp should see that said Sherman should pay and discharge of record the mortgage to Charles E. Appleby, before mentioned; also that the bonds should not be delivered until the Appleby mortgage should be so paid and discharged of record. On March 29, 1876, the defendant Moffett delivered the thirteen bonds to Camp as agent for Sherman, to deliver to the plaintiff under the above agreement of sale, with instructions that the Appleby mortgage must be paid out of the proceeds of the sale. On the next day Camp caused the balance unpaid on the Appleby mortgage, to wit, $6,067.89, to be paid by his correspondent bank in New York, and received a satisfaction piece of said mortgage, which he delivered to the defendant Moffett, and the mortgage was discharged of record on April 3, 1876. The check of the plaintiff was not used at the bank, nor charged to him until April 1, 1876; but it and the bonds were held by the bank as security for the amount paid to Appleby upon his mortgage. On April 1, 1876, after the receipt by Camp of the satisfaction piece, Camp charged the plaintiff with his check of $6,375, credited the amount to Sherman and charged Sherman with the amount paid to Appleby. A few days after this Camp informed plaintiff that the Appleby mortgage had been paid and discharged, and that the mortgage to secure the bonds was the first lien on the premises, and Camp then delivered to plaintiff the bonds so purchased by him. In April, 1880, in an action in this court wherein the defendants Moffett and Lord, as trustees, and the plaintiff were plaintiffs, and Wooster Sherman and others were defendants, a judgment was entered in Jefferson county, upon a defense interposed by said Sherman and others, adjudging the thirteen bonds to be usurious and void, and that the plaintiff was not entitled to enforce the payment thereof. This action is brought to revive and foreclose the Appleby mortgage, in favor of the plaintiff, notwithstanding the satisfaction. Judgment has been entered on the report of a referee dismissing the complaint, and the plaintiff appeals to this court.

*Mullin & Griffin,* for the appellant.

*McCartin & Williams* and *F. W. Hubbard,* for the respondents.

DWIGHT, J.:

The plaintiff's theory of this case is, that he advanced the money to pay the Appleby mortgage at the request of Sherman, the mortgagor, and took the fifteen bonds in payment of the money so advanced and of the loan of $750 previously made by him to Sherman, in security for which he already held two of the fifteen bonds. This theory seems to have been devised to meet the doctrine of *Patterson* v. *Birdsall* (6 Hun, 632; S. C., 64 N. Y., 295), which is relied upon to support the plaintiff's contention on this appeal. Unfortunately, this theory is not supported by the findings of the referee or the proofs on which they are based. The facts are clearly established, — they are not in dispute, — and they support no other theory of the case than that the plaintiff paid his money for the bonds, upon the condition merely that out of it the agent of the mortgagor should satisfy the Appleby mortgage and cause it to be discharged of record. These are the very terms of the plaintiff's letter to Sherman's agent. He had no thought of purchasing the Appleby mortgage, nor as was the case in *Patterson* v. *Birdsall* (*supra*), did he propose to take a new security in lieu of the incumbrance to be discharged. His single purpose was to invest in the second mortgage bonds, which were to be made a first lien by the discharge of the prior mortgage. In the case of *Patterson* v. *Birdsall*, the plaintiffs already held and had paid the consideration for the subsequent incumbrance, and so had a right to redeem the land from the lien of the prior incumbrance and be subrogated to its security. They proposed to do this and to take a new mortgage to cover the amount of both the existing liens. The money which they advanced was advanced to pay off the prior incumbrance and for that purpose alone. In this view and for this reason, the payment of the prior incumbrance was regarded as a transaction separable from the usurious agreement for the new mortgage.

In this case the money of the plaintiff was not advanced for the purpose of paying off the prior mortgage, but for the purchase of the new mortgage bonds. His requirement that the money should be used by the mortgagor to pay off the prior mortgage was merely a condition of his purchasing the bonds. The payment of the prior mortgage was in no sense his act, nor the money employed his money; it had become the money of the mortgagor, subject

only to the condition that it should be employed in the manner specified. The condition would have been equally fulfilled if the mortgagor had employed other money for the purpose, or had procured the discharge of the prior mortgage by the substitution of other security.

The plaintiff, by his own use of the money, had obtained all he had bargained for, viz.: the new mortgage bonds, to be rendered the first lien by the discharge of the prior mortgage. That discharge was expected to operate only to advance the lien of the new mortgage; it was not intended to give him any interest in the old one. To give it that effect would be to make his money do double duty. If the purchase of the bonds had not been usurious, he could not have held both the old mortgage and the new bonds. The effect would have been, as has been said, merely to advance the lien of the second mortgage, and he would have taken the bonds for what they were worth with the first mortgage discharged. This he does now; he takes the bonds for what they are worth; unfortunately for him, they are void for usury, and because they are so, they derive no aid or advancement from the discharge of the prior mortgage. The condition under which he paid his money for them, has been performed, but it is of no avail to him, for the reason that the bonds themselves are void in his hands. This seems to us to be the whole of the plaintiff's case, and if it is so, his action cannot be maintained.

The judgment dismissing the complaint should be affirmed.

SMITH, P. J., and HARDIN, J., concurred.

Judgment affirmed, with costs.